JAMES S. PAYNE, APPELLEE, v. WILLIAM S. TWITCHELL, APPELLANT.

Submitted December 1, 1910—Decided September 29, 1911.

One who has agreed in writing to pay another a commission for securing a buyer for his land does not escape paying the agreed commission by the mere fact that he had conveyed the land before the commission was earned.

On appeal.

Before Justices GARRISON, SWAYZE and VOORHEES.

For the appellant, *Randal B. Lewis.*

For the appellee, *Hooker I. Coggeshall.*

The opinion of the court was delivered by

GARRISON, J.  The appellee recovered a judgment for $175 against appellant for commissions under the following written contract:

"WORTENDYKE, N. J., August 18th, 1909.

"I have a description of my property 20 acre farm at Wortendyke, N. J., entered on the books of James S. Payne, and I agree to pay him a commission of Five per cent. if he secures a buyer for the same at a price satisfactory to me.

"WILLIAM S. TWITCHELL."

The pertinent facts on this appeal are that early in November, 1909, Payne secured a buyer ready, able and willing to buy the farm at $3,500, and so notified Twitchell, who, on October 28th, had sold and conveyed the farm for $3,500.

At the trial before the District Court the defendant made motions for a nonsuit and a direction on the ground that the

sale of the property, prior to the production of a purchaser, revoked the employment under which the commission was earned. The denial of these motions is specified as the ground for the reversal of the judgment that was rendered for the plaintiff for his commission. The appellant's contention can rest only on the notion that the employment of a person to secure a buyer implies that the principal will be able to sell to such buyer or some similar undertaking of which an essential feature is the ability of the principal to convey the land when the willing buyer is produced, whence it is argued that the inability of the principal to convey relieves him from paying what he agreed to pay for a particular service that has been fully performed.

The fallacy of this argument arises from a misconception of the nature of the employment under which the commission was promised. In such an employment the principal does not bind himself to sell or even stipulate that he will be able to convey, and he confers upon the person he employs no authority so to bind him. It is not even necessary to the validity of such contract to pay commissions that the promisor should be the owner of the land, or be able to control the title or even that he shall contemplate its sale. The sole effect of the principal's ownership of the land is that his agreement to pay commissions must be in writing. *Sadler* v. *Young,* 49 *Vroom* 594, is a direct illustration of such an employment by one who was not the owner and could neither convey the land to the buyer secured under his contract or prevent it being conveyed to a stranger. It is of course true that the employment of another to find a buyer of real estate is usually the act of an owner who expects to sell at a satisfactory price, but as in Sadler *v.* Young the agreement to pay for the required service may be the act of one who is not the owner, but is merely interested in producing a purchaser, and from the legal point of view the principal need have no interest in the land at all, may even, to suppose an extreme case, desire to get rid of a disagreeable neighbor by finding a purchaser who will buy his house. He agrees to pay for certain services—

why he wants them is his affair and does not enter into the agreement to pay for such service as the employment calls for. The legal significance of this is that inasmuch as an agreement to convey or even the ability to convey the land in nowise enters into the promise to pay the commission, the conveyance of the land by the principal, if he be the owner, or by its owner, whoever he may be, has of itself no tendency to rescind the agreement to pay for the stipulated service. Such a conveyance may, of course, be an all-sufficient reason why the principal is no longer interested in the result of the employment he has set on foot by his agreement, and hence why he should terminate such agreement by giving notice of his change of mind, but the mere state of mind of one party to a bargain, unless communicated to the other party, in nowise alters the obligation of a subsisting contract between them. That the revocation of an authority normally takes effect as between the parties only from the time when the party who has determined upon such revocation makes his determination known to the other is the doctrine of the civil law.

Story deals with the question at length in his work on *Agency* (*4th ed.,* §§ 470 *et seq.*), citing fully from Pothier and Domat, and showing that the rule of the civil law was the rule of the common law, and it may be added the rule of common sense and common honesty.

. As soon as we get rid of the notion that the ownership or control of the land is an essential part of the agreement by one person to pay another for performing a specified service, we see at once that such employments are in law assimilated, not with agreements touching interests in land or even strictly speaking with the relation of principal and agent, but rather with those special employments by which one is engaged to seek out a particular person or a person answering to a particular description and bring such person into communication with his employer. A person who has been injured in a collision may desire to be put into communication with those who witnessed the accident; a solicitor may be seeking the

heir to an estate; a mother may wish to have her child adopted, and a host of such cases may be imagined, in all of which the character of the employment is not legally distinguishable from that of one who desires to be put in touch with a person who will pay a certain price for a certain piece of land. Yet I apprehend that no one would think of saying that the price stipulated for the service when rendered need not be paid if the plaintiff had settled his damage suit, or the solicitor had retired from the case or the mother had decided to keep her child. The rule of law, although it has been dignified by the citation of Story and the civil lawyers, is really all summed up in the homely saying that "a bargain is a bargain," and a bargain once made remains such until a change of mind by one party known only to him has been communicated to the other party.

The fact of such communication, in the present case, is not found in the state of the case, and is negatived by the intendments necessary to support the judgment.

The same is true as to the fact that the appellant had employed several brokers to find buyers for his farm, which is not only not found as a fact but which standing alone would be without significance. In order to invoke the special rule that has been applied in cases where the sale was effected by one of such several brokers, the fact that the sale was so made is the crux of the rule. In the present case, not only does such fact not appear, but, on the contrary, it is expressly negatived by the state of the case which sets forth that the sale was made by the appellant himself.

This is fatal to the constructive contract suggested in *Vreeland* v. *Vetterlein,* 4 *Vroom* 247, and that has been applied by courts elsewhere. 19 *Cyc.* 260; *Rowan* v. *Hull,* 2 *Am. & Eng. Ann. Cas.* 884; *Quist* v. *Goodfellow,* 9 *Id.* 431; 23 *Am. & Eng. Encycl. L.* 914.

The judgment of the Passaic District Court is affirmed.